IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAUCKMAN UTILITY PRODUCTS, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL NO. 06-133-GPM ) |
| TYCO ELECTRONIC LOGISTICS AG and TYCO ELECTRONICS CORPORATION, | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on Defendants' motion to dismiss (Doc. 13). For the following reasons, the motion is granted in part, and Defendant Tyco Electronics Corporation is dismissed from this action without prejudice. The motion is denied in all other respects.

### BACKGROUND

Plaintiff Rauckman Utility Products, L.L.C. ("Rauckman") filed a two count declaratory judgment action against Tyco Electronic Logistics AG ("TELAG") and Tyco Electronics Corporation ("TEC") with this Court on February 13, 2006 (Doc. 1). The complaint alleges subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Count I requests a declaratory judgment that Rauckman's Wildlife Guard does not infringe U.S. Patent No. 5,679,922, a patent assigned to TELAG and sublicensed to TEC. Count II requests a declaratory judgment that U.S. Patent No. 5,679,922 is invalid and unenforceable. On May 24, 2006, Defendants TELAG and TEC filed a motion to dismiss for lack of subject matter jurisdiction. TELAG and TEC assert that

(1) Rauckman's complaint should be dismissed, in its entirety, because an actual controversy does not exist, and (2) subject matter jurisdiction is lacking for Rauckman's claims against TEC because TEC, as a sublicensee, lacks standing to assert U.S. Patent No. 5,679,922.  After Plaintiff filed a memorandum opposing the motion and Defendants replied, Defendants' motion to dismiss came before the Court for a hearing on July 17, 2006.

Plaintiff Rauckman is a limited liability company with its headquarters in Swansea, Illinois. Rauckman manufactures and sells wildlife shield barriers and is the owner of U.S. Patent No. 5,864,096 ("the '096 patent") for a Wildlife Guard for Electrical Distribution and Substation Facilities.  The '096 patent is manufactured and sold as the "Rauckman Wildlife Shield."  Sales of the Rauckman Wildlife Shield represent a substantial portion of Rauckman's business.

Defendants TELAG and TEC are subsidiaries of Tyco International, have a primary place of business in Wilmington, Delaware, and regularly conduct business in the geographical region covered by the Southern District of Illinois.  TELAG is the owner of U.S. Patent No. 5,679,922 ("the '922 patent") for a Squirrel Shield Device.  TEC is the owner of an "exclusive" sublicense.  The license is not entirely an "exclusive sublicense," however, and does not constitute any grant of title in or to the '922 patent to TEC.  The license grants TEC the right to pursue an infringer only if TELAG (1) elects not to pursue an infringer itself and (2) authorizes TEC in writing to do so. TELAG has submitted an affidavit stating that it "has not given, nor will it give, TEC the right to enforce the '922 patent against Rauckman or its products."

On October 25, 2005, TELAG sent Rauckman a cease and desist letter, notifying Rauckman of the '922 patent and requesting written confirmation within thirty (30) days of Rauckman's

intention to stop making, using, and selling the Rauckman Wildlife Shield.[1]

Rauckman replied to the October 25th letter on November 22, 2005, stating its belief that the Wildlife Shield did not incorporate the subject matter of any claim of the '922 patent. In response, TELAG sent another letter on December 21, 2005, stating, "the Rauckman Wildlife Shield ... is covered by each and every limitation of at least [C]laim 35" of the '922 patent.

On January 10, 2006, counsel for TELAG and Rauckman spoke on the phone concerning the '922 patent and the Rauckman Wildlife Shield. According to Rauckman, there was no discussion regarding resolution of the matter. Allegedly, the conversation mostly consisted of arguments whether the Rauckman Wildlife Shield infringed Claim 35 of the '922 patent. During the January 10th conversation, TELAG's counsel stated that she would discuss the position with "business."

On January 12, 2006, Rauckman sent another letter to TELAG, setting forth in detail its position regarding Claim 35 of the '922 patent. The letter again asserted that Rauckman was not infringing the '922 patent. On February 9, 2006, a second phone conversation took place between TELAG and Rauckman. The conversation included a discussion of the claim interpretation and non-infringement position of the January 12th letter. TELAG did not discuss resolution of the issue, yet asserted, on several occasions, that it was its position that Rauckman's product infringed Claim 35. TELAG stated that it would consider its options in protecting its intellectual property and would discuss its position with "business." TELAG would not provide Rauckman with a firm future date to discuss the issue again and stated it could be "weeks" before TELAG got back to the matter.

---

[1] Plaintiff asserts that confusion existed as to who actually sent the letter. Whether the letter had any relation to anyone other than TELAG, however, is of no concern at this juncture.

Based on the tenor of the February 9th conversation, Rauckman filed its complaint before this Court.[2]

## ANALYSIS

As a preliminary matter, the Court dismisses TEC from this action. TEC's sublicense only allows TEC to pursue an infringer if TELAG chooses not to do so and notifies TEC of that choice. Because the affidavit supplied by TELAG is clear in its declaration that TELAG will not allow TEC to pursue an infringement action against Rauckman, the affidavit negates the possibility of an infringement action by TEC and moots any argument that Rauckman had a reasonable apprehension that such would take place.[3] *Cf. C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 (Fed. Cir. 1983). In addition, at the July 17, 2006 hearing before this Court, TELAG's counsel reiterated TELAG's intent to pursue Rauckman and to not authorize TEC to do so.

In reviewing a motion to dismiss for lack of subject matter jurisdiction, a district court must accept all well-pleaded factual allegations in the complaint and view those allegations, along with the inferences reasonably drawn from the complaint, in the light most favorable to the plaintiff. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). However, a "district court may properly look beyond the jurisdictional allegation of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long*, 182 F.3d at 554 (citation omitted). As always, the burden of establishing federal jurisdiction is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977)).

---

[2] Subsequent to the complaint, correspondence through letters and conversations continued. TELAG sent one such letter requesting information regarding Rauckman's sales so TELAG could consider past damages for infringement.

[3]This is an essential element required to sustain jurisdiction, as set forth below.

Because Rauckman's action is for declaratory judgment under 28 U.S.C. § 2201(a), Rauckman bears the burden of showing the existence of an actual controversy if Rauckman is to establish subject matter jurisdiction. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937) (an actual controversy must be present before a declaratory judgment action is ripe for adjudication). The actual controversy must be "definite and concrete," touching the legal relations of parties which have adverse legal interests. *Id.* at 242. If a declaratory judgment would settle an actual controversy and afford relief from uncertainty, insecurity, or delay regarding a party's legal rights, the action is not subject to dismissal. *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987).

In patent cases, the law of the United States Court of Appeals for the Federal Circuit governs when determining whether there is an actual controversy. 28 U.S.C. § 1295 (West 2006). The Federal Circuit has created a two-part test to determine the existence of an actual controversy in these cases. First, the defendant's conduct must have created, in the plaintiff, a reasonable apprehension that the defendant will initiate a suit for infringement. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). Second, the plaintiff either must actually have produced the alleged infringing device or have prepared to produce that device. *Id*.

In other words, two core elements are required if Rauckman is to establish an actual controversy: 1) acts by TELAG indicating intent to enforce its patent against Rauckman, and (2) acts of Rauckman that might subject it to suit for patent infringement. *Id*. The first prong looks to TELAG's conduct; the second to Rauckman's conduct. *Id*.

Rauckman has the burden of establishing both parts of the test by a preponderance of the

evidence. *See Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398 (Fed. Cir. 1984). While the test is objective and is applied to the facts existing when the complaint is filed, *see Arrowhead*, 846 F.2d at 736, subsequent events can reinforce the correctness of the conclusion. *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) (citing *C.R. Bard*, 716 F.2d at 881) (considering statements made subsequent to filing declaratory action).

Because both parties stipulate to the second prong of the test, the Court will focus on whether Rauckman can prove, by a preponderance of the evidence, that the first prong is met. In applying the first prong of the test, a court must first look for any express charges of infringement. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992). If there is no express charge of infringement, a district court must then look to the totality of the circumstances. *Id.* at 888. Because TELAG's actions fall short of an express charge of infringement, an examination of the totality of the circumstances must be made. *C.R. Bard*, 716 F.2d. at 880.[4]

The totality of circumstances tests looks past the subtleties in lawyer language and determines whether the defendant's conduct created, in the plaintiff, a reasonable apprehension of imminent litigation. *Arrowhead,* 846 F.2d at 736 (citing *Goodyear*, 824 F.2d at 956). As the Federal Circuit has stated:

> The test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling. The need to look to substance rather than form is especially important in this area, because in many instances … the parties are sensitive to the prospect of a declaratory judgment action and couch their exchanges in terms designed either to create or defeat declaratory judgment jurisdiction. In the end, the question is whether the relationship between the parties can be considered

---

[4] The statements made by TELAG during telephone conversations simply appear to be responses to Rauckman's initiatives. *Shell*, 970 F.2d at 889 (language that indicates activities "fall within," or are "covered by," a patent fall short of alleging infringement).

a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another.

*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811-12 (Fed. Cir. 1996).

In the context of patent infringement, the Declaratory Judgment Act is a remedy for tactics that infect the competitive environment of the business community with uncertainty and insecurity. *Arrowhead*, 846 F.2d at 735. "Uncertainty" in the context of the Act refers to the reasonable apprehension created by a patentee's threats and the looming specter of litigation that results from those threats. *Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991).

When a smaller business like Rauckman feels threatened by a larger business, there are many uncertainties, including whether there will be legal proceedings, whether one will have to incur the expense and inconvenience of litigation, and whether one must reserve funds for potential damages. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005). In this case, as in many patent infringement cases, Rauckman's liability was growing with each sale, and Rauckman's uncertainty was likewise increasing with each passing day. As such, Rauckman is entitled under the Declaratory Judgment Act to seek a timely resolution of the controversy and remove itself from "the shadow of threatened infringement litigation." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037-38 (Fed. Cir. 1995).

While TELAG asserts that Rauckman was merely skittish, it does not appear that Rauckman's action was only the result of a nervous state of mind. *Cf. Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995) ("The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer …"). Rauckman waited to file its complaint until two letters had been sent by TELAG and two phone conversations had taken place. *Cf. Fresenius United States v. Transonic Sys.*, 207 F. Supp. 2d 1009,

1011 (N.D. Cal. 2001) (one letter, seeking to open negotiations, insufficient to establish an actual controversy). The fact that TELAG's letters and conversations skirt around express infringement does not mean that the letters and conversations did not indirectly create a reasonable fear that a suit was about to be filed. It is obvious that uncertainty and insecurity existed on the part of Rauckman. It is objectively reasonable that the letters, conversations, and other acts by TELAG created this fear. In addition, the subsequent requests by TELAG for sales information to be used for damage computation reinforce the conclusion that Rauckman's fear was reasonable.

TELAG also noted that Rauckman was trying to beat them to the punch, when no punch existed. The fact that TELAG continues to assert that it never had any intention to sue does not guarantee, however, that TELAG's intentions will not change over time or that they could have changed at any time. *Goodyear*, 824 F.2d at 956 (citing *C.R. Bard*, 716 F.2d at 881) ("[T]he mere fact that [defendant's] president has not at this particular moment authorized a patent infringement action against [plaintiff] is not dispositive of its intentions for the future."). When TELAG's relevant acts are viewed in light of the totality of the circumstances, Rauckman's apprehension of imminent litigation can objectively be considered reasonable.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. 13) is **GRANTED in part and DENIED in part**. Tyco Electronics Corporation ("TEC") is **DISMISSED** from this action without prejudice.

**IT IS SO ORDERED.**

DATED: 08/11/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge
